# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF STERLING HEIGHTS,

Petitioner-Appellee,

v

CHRYSLER GROUP, L.L.C.,

Respondent-Appellant,

and

MICHIGAN STATE TAX COMMISSION,

Respondent.

FOR PUBLICATION
March 19, 2015
9:05 a.m.

No. 317310
Macomb Circuit Court
LC No. 2013-000125-AA

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

O'CONNELL, J.

Chrysler Group, L.L.C., (Chrysler) appeals by leave granted the circuit court's order reversing the decision of the State Tax Commission (the Commission) to grant Chrysler's petition for air pollution control tax exemption certificates. The circuit court remanded for the Michigan Department of Environmental Quality (MDEQ) to evaluate Chrysler's petitions. We affirm.

## I. FACTS

On June 15, 2012, Chrysler filed two petitions for air pollution control tax exemption certificates with the Michigan Department of Treasury. The first petition was for an exemption of about $81 million dollars for a new automobile painting building. The petition included requests for several pieces of pollution control equipment and, as part of the petition, a request for about $47 million that represented the "percentage of the new shop attributable to pollution control equipment based on the floor plan." In the second petition, Chrysler sought an exemption of about $5 million for completed aspects of the existing paint shop, including repairs to equipment, new piping and storage equipment, and a request for about $2.5 million representing the "value of [the] pollution control portion" of the real property. In response to the petitions, the Commission requested additional information, which Chrysler provided. Chrysler also submitted petitions for water pollution control tax exemption certificates.

-1-

In December 2012, the Commission held a hearing on Chrysler's petitions. At the hearing, Sterling Heights contended that the painting building did not qualify for exemptions because it served the primary purpose of painting vehicles rather than removing air pollution. Chrysler responded that it could seek exemptions for those portions of the building that did serve the primary purpose of air pollution control. The Commission declined to refer the petitions to the MDEQ, and it granted the air pollution control certificates in the full amounts.

Sterling Heights appealed to the circuit court. The parties reiterated the arguments that they raised before the Commission. The circuit court reversed and remanded. It reasoned that, because the Commission was required to submit the petition to the MDEQ but had failed to do so, its decision was not supported by competent, material, and substantial evidence. The circuit court required the Commission to refer the petitions to the MDEQ "for a technical evaluation." Chrysler now appeals.

## II. STANDARDS OF REVIEW

A party may appeal the Commission's decision to grant a pollution control tax exemption certificate to the circuit court. MCL 324.5907. The circuit court must set aside the agency's order if, among other reasons, the decision violates a statute or it was not supported by competent, material, and substantial evidence. MCL 24.306(1).

This Court reviews the circuit court's decision to determine whether the circuit court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Monroe v State Employees' Retirement Sys*, 293 Mich App 594, 607; 809 NW2d 453 (2011) (quotation marks and citation omitted). Substantial evidence is "evidence that a reasoning mind would accept as sufficient to support a conclusion." *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002). Substantial evidence is "more than a mere scintilla but less than a preponderance of the evidence." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 584; 701 NW2d 214 (2005) (quotation marks and citation omitted).

This Court reviews de novo questions of statutory interpretation. *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010). When interpreting a statute, our goal is to give effect to the intent of the Legislature as expressed through the statute's language. *Id*. If the statute's language is not ambiguous, we must enforce the statute as written. *Id*.

## III. WATER POLLUTION CONTROL TAX EXEMPTION CERTIFICATES

Chrysler contends that the circuit court violated its subject matter jurisdiction by voiding water pollution control tax exemption certificates that Sterling Heights did not appeal. Sterling Heights concedes that it did not appeal the water pollution control tax exemption certificates, but it argues that Chrysler's argument lacks merit because the circuit court did not void the water pollution control exemption certificates. We conclude that Chrysler's assertion is without merit.

Chrysler contends the circuit court expressed a belief at the hearing that the air pollution control exemption certificates could not be separated from the water pollution control exemption certificates. "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009).

Regardless of the circuit court's statements at the hearing, its written remand order did not include the water pollution control exemption certificates:

> IT IS HEREBY ORDERED that the State Tax Commission's granting of the December 13, 2012, Air Pollution Control Tax Exemption Certificates is hereby REVERSED for the reasons stated on the Record;

> IT IS FURTHER ORDERED that the State Tax Commission[']s granting of real property exemptions for the Paint Shops is hereby Reversed and Vacated, and remanded for the reasons stated on the record.

> IT IS FURTHER ORDERED that the State Tax Commission shall refer these applications to the Michigan Department of Environmental Quality to perform a technical evaluation.

Accordingly, we reject Chrysler's argument that the trial court improperly included the water pollution control exemption certificates in its remand order. The language of the order itself only concerned the air pollution control tax exemption certificates.

## IV.  AIR POLLUTION CONTROL TAX EXEMPTION CERTIFICATES

Regarding the air pollution control tax exemption certificates, Chrysler first contends that it may seek an exemption certificate for parts of a structure, as long as the primary purpose of that part of the structure is pollution control. Sterling Heights contends that a building is only exempt if the entire building would be exempt and, because the main purpose of the painting building is to paint cars, Chrysler is not entitled to any exemption. We conclude that Chrysler may seek exemption certificates for portions of its building.

An exemption certificate exempts a facility from real and personal property taxes. MCL 324.5904(1). A facility must meet the requirements of both MCL 324.5901 and MCL 324.5903 to qualify for an exemption certificate. *DaimlerChrysler Corp v State Tax Comm*, 482 Mich 220, 226 (lead opinion by YOUNG, J.), 237 (KELLY, J., concurring in result), 248-249 (WEAVER, J., concurring in part and dissenting in part); 753 NW2d 605 (2008). A facility may include structures, parts of structures, or accessories of structures or equipment:

> As used in this part, "facility" means machinery, equipment, structures, or any part or accessories of machinery, equipment, or structures, installed or acquired for the primary purpose of controlling or disposing of air pollution that if released would render the air harmful or inimical to the public health or to property within this state. . . . [MCL 324.5901.]

To qualify for an exemption certificate, the facility must also be designed and operated primarily to remove pollutants from the air:

> If the [MDEQ] finds that the facility is designed and operated primarily for the control, capture, and removal of pollutants from the air, and is suitable, reasonably adequate, and meets the intent and purposes of [MCL 324.5501 *et seq*] and rules promulgated under that part, the [MDEQ] shall notify the state tax

commission, which shall issue a certificate. The effective date of the certificate is the date on which the certificate is issued. [MCL 324.5903.]

The plain language of the statute does not support Sterling Height's argument that the entire facility must operate to control air pollution because the definition of facility includes "equipment, structures, *or any part or accessories of* . . . equipment[] or structures . . . ." See MCL 324.5901 (emphasis added). Because a party may seek an exemption for a facility, and a facility by definition includes a part of a structure, a party may seek exemption for a part of a building. Therefore, we conclude that Chrysler may seek a tax exemption for parts of a structure as long as the part of the structure is designed and operated primarily to control, capture, and remove pollutants from the air.

The Michigan Supreme Court's decision in *DaimlerChrysler* does not support Sterling Height's argument. In *DaimlerChrysler*, the Michigan Supreme Court considered whether the appellant could seek a tax exemption certificate for "test cells": structures in which the appellant tested new motor vehicles to ensure that the vehicles complied with emission standards. *DaimlerChrysler*, 482 Mich 220, 223 (YOUNG, J.), 243 (WEAVER, J.); 753 NW2d 605 (2008). The Michigan Supreme Court concluded that the appellants were not entitled to exemption certificates because "the *test cells* . . . are not the source of the removal, control, or capture of pollution[,]" but rather, the cells only ensured cleaner engines and thus were only indirectly responsible for removing pollution from the air. *Id.* at 229 (YOUNG, J.). See *Id.* at 238 (KELLY, J.).

This decision is distinguishable from the facts in this case. In *DaimlerChrysler*, the corporation sought an exemption for a testing building that did not itself contribute to removing pollution from the air; the engines reduced air pollution, not the building the engines were tested in. In this case, Chrysler seeks exemption for equipment and parts of structures that either directly contribute to removing pollution from the air or that house equipment that does so. We conclude that this is not a case in which Chrysler seeks an exemption certificate for a structure that is only indirectly responsible for removing pollution from the air. Accordingly, as long as the portions of the paint shop for which Chrysler seeks an exemption have the primary purpose of controlling or disposing of air pollution, Chrysler may seek an exemption for those parts of the structure.

Second, Chrysler contends that the circuit court erroneously remanded to the Commission to have the MDEQ evaluate its petition. According to Chrysler, the Commission did not need to refer its petition for air pollution control tax exemption certificates to the MDEQ because a memorandum of understanding between the Commission, the Department of Treasury, and the MDEQ provided a preapproved list of commonly approved air pollution control equipment. Sterling Heights contends that the MDEQ must review and approve each petition individually.

The Commission must seek approval of the MDEQ before issuing a tax exemption certificate:

Before issuing a certificate, the state tax commission shall seek approval of the [MDEQ] and give notice in writing by certified mail to the department of treasury and to the assessor of the taxing unit in which the facility is located or to be

located, and shall afford to the applicant and the assessor an opportunity for a hearing. . . . [MCL 324.5902(2).]

The MDEQ must make certain findings before approving a facility:

> If the [MDEQ] finds that the facility is designed and operated primarily for the control, capture, and removal of pollutants from the air, and is suitable, reasonably adequate, and meets the intent and purposes of [MCL 324.5501 *et seq*] and rules promulgated under that part, the [MDEQ] shall notify the state tax commission, which shall issue a certificate. . . . [MCL 324.5903.]

In 2011, the Legislature directed the MDEQ to "enter into a memorandum of understanding with the department of treasury to develop a process for the review and approval of tax exemption certificates in accordance with the list of commonly approved air pollution control equipment . . . ." 2011 PA 63, art VII, part 2, § 311. Pursuant to this directive, the Commission, Department of Treasury, and MDEQ signed a memorandum of understanding in which they agreed on a process to create a list of commonly approved equipment. The memorandum provided that the MDEQ would submit to the Commission a list of pollution control equipment that the MDEQ commonly approved. The Commission would then approve that list. The MDEQ additionally provided that it would assist in the review of petitions "where the equipment is not identified on the annual pollution control equipment list approved by the MDEQ."

We agree with Chrysler that, pursuant to the Legislature's directive and their agreement in the memorandum of understanding, the MDEQ may preapprove certain facilities and the Commission need not seek additional approval before issuing an exemption certificate for those specific facilities. Nothing in the language of MCL 324.5902 provides a specific time frame during which the Commission shall seek the MDEQ's approval of certain equipment. It simply provides that the MDEQ must approve a facility before the Commission may issue an exemption certificate.[1] No language in the relevant statutes precludes the MDEQ from finding in advance that certain equipment or facilities meet the requirements of MCL 324.5903.

Unfortunately, the "List of Commonly Approved Air Pollution Control Equipment" pertinent to this case does not actually comply with MCL 324.5903. The list is extremely generic and broad. It not only includes facilities that are "commonly" exempt, but also includes facilities that are "sometimes" or "rarely" tax exempt. Further, some of the facilities that are listed as commonly tax exempt have subsequent caveats that state that the facility may not be tax exempt for certain uses or under certain circumstances. Other portions of the list include

---

[1] We recognize that our holding is contrary to the unpublished decision in *City of River Rouge v EES Coke Battery Co, LLC*, unpublished opinion per curiam of the Court of Appeals, issued December 9, 2014 (Docket Nos. 314789, 315621, 315633, 315634, 315635, & 315638). However, unpublished decisions are not binding. MCR 7.215(C)(1). Chrysler in this case has raised a specific argument regarding the timing language of MCL 324.5902 that was not decided in this unpublished decision.

ancillary systems that range from the broad ("electrical equipment for exempt equipment") to the specific ("equipment used to treat an exempt collector inlet gas stream," with examples). These ancillary lists do not indicate whether the listed items are commonly, sometimes, or rarely tax exempt.

In this case, Chrysler sought tax exemption for some facilities that were listed as commonly tax exempt. But it also sought exemptions for other facilities under some of the broad, unclear categories. Unless the MDEQ unequivocally listed the specific equipment or parts of structures for which Chrysler sought exemption on the preapproved list, the Commission did not have preapproval for those facilities. The memorandum of understanding and the list itself clearly contemplate that there would be situations in which facilities would fall outside the MDEQ's list of approved equipment. And in this case, many of Chrysler's requested exemptions were not specifically contained on the MDEQ's list.

In sum, the list on which Chrysler relied is meaningless as a tool from which to determine the MDEQ's preapproval. For facilities on a preapproved list to meet the requirements of MCL 324.5903, the list must only include, or at least clearly indicate, facilities that the MDEQ has found are designed and operated primarily for the control, capture, and removal of pollutants from the air and are suitable and adequate to meet the purposes of MCL 324.5501 *et seq*. The list in this case did not do so.

Accordingly, we conclude that the circuit court properly determined that the Commission's decision was not supported by competent, material, and substantive evidence. The MDEQ had not made findings regarding the facilities for which Chrysler sought exemption under MCL 324.5903. Further, the Commission's decision was contrary to established law because it did not follow the statutory directive of MCL 324.5902(2) to obtain the MDEQ's approval. We conclude that the learned circuit court properly remanded for the Commission to refer Chrysler's specific petitions to the MDEQ.

We affirm. As the prevailing party, Sterling Heights may tax costs. MCR 7.219(A).

/s/ Peter D. O'Connell
/s/ David H. Sawyer

-6-