# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of POSTON.

---

KEVIN D. POSTON, Trustee Personal
Representative of the Estate of THELMA
LILLIAN POSTON,

        Appellee/Cross-Appellant,

v

CRAIG POSTON,

        Appellant/Cross-Appellee,

and

CARL POSTON and KEITH POSTON,

        Appellees.

UNPUBLISHED
July 25, 2017

No. 331772
Saginaw Probate Court
LC No. 14-132118-DE

---

Before: SERVITTO, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Petitioner, Craig Poston, appeals as of right a February 9, 2016 opinion and order denying his petition to remove respondent, Kevin D. Poston, as trustee of the Thelma L. Poston Revocable Trust. Respondent has filed a cross-appeal as of right also challenging the February 9, 2016 opinion and order, as well as separate orders, entered on March 7, 2016, granting petitioner's petition for payment of attorney fees, and denying respondent's motion for case evaluation sanctions. For the reasons stated herein, we affirm the February 9, 2016 opinion and order in part, reverse in part, and remand for further proceedings consistent with this opinion. We also affirm the orders granting the petition for payment of petitioner's attorney fees, and denying respondent's motion for case evaluation sanctions.

## I. FACTS AND PROCEDURAL HISTORY

This matter arises from a dispute between brothers regarding the administration of their mother's estate and trust. On October 24, 1994, Thelma L. Poston established the Thelma L. Poston Revocable Trust. Thelma acted as trustee until she and her husband, Carl C. Poston, Jr., appointed their son, respondent, successor trustee on March 28, 2011. The Trust provides that,

-1-

upon Thelma's death, if Carl, Jr., is no longer alive, the trustee shall divide the net income of the Trust into separate and equal shares for Thelma's then-surviving children.

Thelma died on May 22, 2014, and was not survived by Carl, Jr. Respondent filed an application for informal probate of Thelma's estate on July 30, 2014, and was appointed personal representative of the estate the same day. Respondent listed himself, the Trust, and his brothers – petitioner, Carl Poston III, and Keith Poston – as the estate's heirs and devisees.

After learning of respondent's application through his attorney, petitioner filed a petition to compel relief pursuant to MCL 700.1308, and for registration of the Trust, on January 12, 2015. He asserted that respondent: (1) breached his fiduciary duties by failing to provide an accounting of the Trust to the trust beneficiaries upon Thelma's death; (2) may have unduly influenced Thelma and Carl, Jr., to deed him a survivorship interest in real property at 910 Morris in Saginaw, at a time when they may have lacked the capacity to do so; (3) advised petitioner that he charged the Trust a 1% fee for each year from 2007 to 2014, totaling $107,323.33, in violation of MCL 700.7814(2)(d), which requires a trustee to notify beneficiaries in advance of any change in the trustee's compensation; (4) improperly converted Trust assets and acted in a self-dealing manner when he transferred Trust funds into bank accounts owned by him and his wife, Kathy Poston; and (5) failed to comply with a February 25, 2015 stipulated order requiring that he provide all interested parties a proper accounting of the Trust. On the basis of these allegations, petitioner requested that the probate court order an accounting of the Trust, remove respondent as personal representative and trustee under MCL 700.1308, if necessary, deny trustee fees and restore the fees to the Trust, and award attorney fees and sanctions.

On December 15 and 16, 2015, the probate court conducted a hearing on the petition to compel relief. Respondent testified that, as trustee, he transferred Trust funds held under his parents' names in accounts with the Catholic Federal Credit Union, ING, Ameris, and Maier and Associates, to a UBS account that he and Kathy owned jointly, and later to other accounts he and Kathy held jointly at Main Street Bank. According to respondent, his parents' financial advisor Wayne Maier, suggested that he make the transfer, and his parents agreed. However, they always refused to go to the bank and sign the required documents themselves.

Respondent also admitted that he and Kathy had borrowed from the Trust funds in those personal accounts. Kathy admitted the same. However, they both testified that they had repaid much of the money borrowed.

Loans were also made from Trust funds to Carl III and petitioner. In 2008, Carl III asked Carl, Jr., and Thelma for a loan, and received $370,277.59 from the Trust. The loan was reflected in the Third Amendment to the Trust. Petitioner received $150,000, a little over $100,000, and $55,000 from the Trust. These loans were reflected in the Fourth, Fifth, and Sixth

Amendments to the Trust. Respondent said that petitioner also received loans from the Trust for $20,291.67 and $57,260.56.[1]

Petitioner did not dispute that he received money from the Trust, or the amounts testified to by respondent. However, he said that he viewed them as advancements on his inheritance rather than as loans from Trust funds, despite the fact that he signed advancement documents subjecting the distributions he received to a 4% interest rate.

According to petitioner, until he received a letter from respondent on July 10, 2014, regarding the Trust, he had no idea that respondent was going to charge a 1% trustee fee.[2] He had also never seen a spreadsheet listing Trust assets like the one attached to the letter, and was never notified that Trust funds were transferred from his parents' accounts to accounts held by respondent and Kathy.

Kathy, an accountant, confirmed that Trust funds were transferred from accounts held by respondent's parents to a UBS account owned jointly by her and respondent. The funds were then transferred again, in September 2011, to MSB. She clarified that four MSB accounts exist, but that only three contain Trust funds. After the Trust funds were transferred from UBS to MSB, she and respondent removed $15,000, of which $10,000 had been repaid. They had also been borrowing $3,500 per month beginning in February 2012. Although they deposited money back into the account every month, it was not always the full amount borrowed.

At the close of the hearing, the probate court found that respondent breached his fiduciary duties for failing to properly account and for self-dealing, but declined to remove respondent as trustee, choosing to deny respondent a trustee fee instead. In so doing, the probate court stated, "Mr. Kevin Poston has an attorney who can help get this matter closed with the proper accounting and the proper payments at this point in time, so I will not remove him but will provide guidance later in this order." The probate court denied petitioner's conversion claim based on its findings that all Trust funds remained intact, and that petitioner failed to prove the elements of conversion, and also denied petitioner's claims of undue influence.

The court further found that all Trust funds given to Thelma's sons were loans and not advancements, and that Thelma and Carl, Jr., intended to impose a 4% interest rate on those loans. Finally, it awarded attorney fees to both parties out of the administrative expenses of the Trust.

On January 25, 2016, respondent filed a motion for entry of an order pursuant to MCR 2.602(B)(4), and each party submitted proposed orders. Petitioner's proposed order contained the following language: "IT IS FURTHER ORDERED that the Trustee with his attorney shall

---

[1] It is not clear that these numbers are accurate. According to an inventory of the loans petitioner received from the Trust, admitted into evidence as Exhibit 30, petitioner received Trust funds in the amounts of $150,000, $100,636.12, $35,020, $55,020, $665.80, $35,000, $1,800, and $867.

[2] The July 10, 2014 letter, admitted into evidence as Exhibit 30, explained that respondent had been appointed trustee of the Trust, that respondent charged the Trust a fee of 1% per year for his services, and that petitioner would not receive any additional funds from the Trust based on the distributions he had already received. The above-referenced inventory was attached.

provide and file all accountings and other documents necessary to resolve the matter forthwith and that the trustee shall reveal all loans to self and that same shall be repaid or otherwise deducted from his portion of the estate." Ultimately, the probate court entered an order that did not specifically require respondent to provide an accounting of the Trust. The February 9, 2016 opinion and order is consistent with its ruling on the record in all other respects. It provides a list of each brother's outstanding loan balance, values the Trust at $1,418,480.26, and states, "[S]eparate Judgments shall issue against both Craig Poston and Carl Poston for the difference between the amounts of their prior over-distribution and the amount of their current outstanding loan balance (including interest)[.]"

On February 9, 2016, petitioner filed a petition for payment of attorney fees, requesting that the probate court order payment of the attached fees and costs. Before filing a response to the petition, respondent filed a motion for case evaluation sanctions against petitioner pursuant to MCR 2.403(O), asserting that case evaluation occurred on November 12, 2015, the panel awarded petitioner $11,000 against the Trust to settle all claims, the Trust accepted the case evaluation award, but petitioner rejected the award, and the outcome of the petition to compel relief was not more favorable to petitioner than the case evaluation award.

The probate court held a hearing for both the petition and the motion. With regard to attorney fees, the probate court concluded, "The Court does find that there was plenty of work done in this matter for both sides and the Court feels that both attorneys meet all the qualifications necessary under the statutes and the law for the award of attorney fees that the Court did award and the Court is going to approve those up and through the time of the hearing." With regard to the motion for case evaluation sanctions, the probate court denied the motion for sanctions, finding:

> The Court is not inclined to award sanctions as a result of that court rule due to the fact that I did find that all, quote, 'interested', unquote, parties were not notified by the trustee in this matter. The evaluation itself indicated it was against, quote, 'interested parties', unquote, and not just a single party. That even looking to see if it's more favorable as to the -- as to the defendant or the trust, the Court did not award trustee fees, the 1 percent or whatever was being claimed at that time, which taking that versus the outcome, where the Court indicated that the amounts received by the parties were in fact loans and that they did receive their share of the estate and the Court did tack on a 4 percent interest which may be the part that has to be compared to the amounts not given by the trustee which may not make it more favorable anyway.

The probate court entered separate orders on March 7, 2016, granting the petition for payment of petitioner's attorney fees and denying respondent's motion for case evaluation sanctions.

## II. ANALYSIS

## A. TRUSTEE REMOVAL

Petitioner first argues that the probate court clearly erred when it failed to remove respondent as trustee.

Where a probate court sits without a jury, its findings are reviewed for clear error. *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). "A finding is clearly erroneous

when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. This Court reviews for an abuse of discretion a probate court's decision whether to remove a trustee. *In re Duane Baldwin Trust*, 274 Mich App 387, 396-397; 733 NW2d 419 (2007). An abuse of discretion occurs when the lower court's decision is outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

"In general, the duties imposed on [a] trustee are determined by consideration of the trust, the relevant probate statutes and the relevant case law." *In re Green Charitable Trust*, 172 Mich App 298, 312; 431 NW2d 492 (1988). Under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., which includes the Michigan Trust Code, MCL 700.7101 *et seq*., trustees must keep adequate records of the administration of the trust, MCL 700.7811(1), report to beneficiaries, MCL 700.7814, and keep trust property separate from his or her own property, MCL 700.7811(2). If a trustee "embezzles or wrongfully converts trust property," the trustee is liable "for double the value of any property embezzled, converted, or wrongfully withheld . . . ." MCL 700.7813(4). Further, the Trust itself states: "Any income beneficiary hereunder, upon his or her written request or the written request of his or her legal representative, made not more than quarter-annually, may demand and receive from the Trustee a statement of the financial condition of the trust . . . ."

A probate court may remove a trustee who has committed a serious breach of trust. MCL 700.7706(1) and (2)(a); MCL 700.7901(2)(g); see also MCL 700.1308(1)(g). "A violation by a trustee of a duty the trustee owes to a trust beneficiary is a breach of trust." MCL 700.7901(1). *Ducharme v Ducharme*, 305 Mich App 1, 5; 850 NW2d 607 (2014).

The probate court concluded that respondent did not convert Trust funds, but found that respondent breached his fiduciary duties by failing to properly account and by self-dealing. However, in lieu of removing respondent as trustee, the court denied respondent a trustee fee for his work in administering the Trust. The probate court's remedy was appropriate. Neither MCL 700.7706, nor MCL 700.7901, mandate that a court remove a trustee for breach of trust, as evidenced by each statute's use of the word "may." MCL 700.7706(2)(a);[3] MCL 700.7901(2)(g).[4] Further, "in lieu of or in addition to removing a trustee, to the extent it is not inconsistent with a material purpose of the trust, the court may order any appropriate relief under

---

[3] MCL 700.7706 provides, in pertinent part:

> (2) The court may remove a trustee if 1 or more of the following occur:

> (a) The trustee commits a serious breach of trust.

[4] MCL 700.7901 provides, in pertinent part:

> (2) To remedy a breach of trust that has occurred or may occur, the court may do any of the following:

> * * *

> (g) Remove the trustee as provided in section 7706.

section 7901(2) that is necessary to protect the trust property or the interests of the trust beneficiaries." MCL 700.7706(3). Reducing or denying the compensation of a trustee is a remedy listed under MCL 700.7901. MCL 700.7902(2)(h). Moreover, the probate court determined that respondent's actions did not ultimately result in the loss of Trust funds, and the testimony at the hearing suggests that respondent transferred Trust funds into personal accounts with his parents' knowledge, and with the advice of Maier, his parents' financial advisor and friend. Thus, the probate court's decision not to remove respondent as trustee was not outside the range of reasoned and principled outcomes.

## B. CONVERSION

Next, petitioner argues that the probate court erred when it found that respondent did not convert Trust assets.

A probate court's factual findings are reviewed for clear error, "while the court's dispositional rulings are reviewed for an abuse of discretion." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App at 549. An abuse of discretion occurs when the lower court's decision is outside the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388.

In support of his petition to compel relief below, petitioner asserted that respondent converted[5] Trust funds by transferring the funds from Trust accounts to his own personal accounts. To remedy the improper conduct, petitioner requested that the probate court order a transfer of the funds back to a Trust account. Ultimately, the probate court found that petitioner failed to prove the elements of conversion, and that all Trust funds remained intact. These findings are not clearly erroneous.

"To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care," and "must have obtained the money without the owner's consent . . . ." *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111-112; 593 NW2d 595 (1999) (citations and quotation marks omitted). Respondent testified extensively that he transferred the Trust funds to the UBS and MSB accounts at the urging of Maier, his parents' financial advisor, and with his parents' consent. Further, although respondent and Kathy borrowed funds from the Trust without properly accounting for the loans, respondent testified that he paid two of those loans back within 30 days, and Kathy testified that they made partial repayments on the $15,000 loan to their daughter, and on the monthly $3,500 withdrawals from Trust funds. After proper accounting, there is no reason that these loans must be treated

---

[5] Petitioner did not bring a specific action for conversion under MCL 700.7813(4), which provides that "[i]f a person embezzles or wrongfully converts trust property, or refuses, without colorable claim of right, to transfer possession of trust property to the current trustee upon demand, the person is liable in an action brought by the current trustee, or the beneficiary of the trust for the benefit of the trust, for double the value of any property embezzled, converted, or wrongfully withheld from the current trustee."

any differently than those made to Carl III and petitioner from Trust funds.[6] Thus, the probate court did not err when it found that respondent did not convert Trust assets.

Petitioner now asserts that the difference between the total value of funds in the CFCU and Maier and Associates Trust accounts at the end of 2010, and the total value of funds in the MSB accounts at the end of 2011, as evidenced by the spreadsheet admitted as Exhibit 30, demonstrates that Trust funds are unaccounted for. First, it appears that petitioner miscalculated the size of the difference by failing to account for the Trust funds that remained at CFCU at the end of 2011. Second, petitioner admits both that he failed to make this specific argument below, and that "[n]o testimony or evidence was provided as to where those additional funds were placed or what those funds were used for." With no evidence on the record, when the probate court made its ruling, that respondent misappropriated these funds, we cannot conclude that the probate court's factual findings were clearly erroneous, or that the probate court abused its discretion when it determined that respondent did not convert trust funds.

### C. LOAN INTEREST

Third, petitioner asserts that the trial court erred when it determined that loans made to beneficiaries of the Trust are subject to a 4% interest rate. We agree.

A probate court's factual findings are reviewed for clear error, "while the court's dispositional rulings are reviewed for an abuse of discretion." *In re Temple Marital Trust*, 278 Mich App at 128. "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App at 549. An abuse of discretion occurs when the lower court's decision is outside the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388. "We review de novo a probate court's construction and interpretation of the language used in a will or a trust." *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012).

The distributions made to petitioner in the amount of $150,000, $100,636.12, and $55,000, were codified in the Fourth, Fifth, and Sixth Amendments to the Trust. The distribution to Carl III was codified as the Third Amendment to the Trust. Each of the Amendments states, "Any and all loans described herein, shall accrue no interest but shall be evidenced by a written acknowledgment of the loan and acceptance thereof." Thelma signed each amendment.

In contrast, petitioner signed two statements of advance against inheritance for the same $150,000, $100,636.12, and $55,000 distributions, which state that the distributions are to be considered loans subject to a 4% interest rate. Thelma did not sign either statement.

---

[6] In fact, as part of its ruling on petitioner's conversion claim, the probate court stated: "The Court feels that the fees are still there; that they weren't converted on a basis that was required under the elements of conversion. Those elements were not proved nor were there anything significantly brought to the Court that would even allow circumstantial evidence to allow conversion, but there were loans to self which the trustee needs to reveal. He has a higher duty as he is a fiduciary and didn't comply with that duty."

As respondent asserts, under Michigan contract law, "one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 567; 596 NW2d 915 (1999) (citation and quotation marks omitted). However, "[w]hen construing a trust, 'a court's sole objective is to ascertain and give effect to the intent of the settlor.' " *In re Stillwell Trust*, 299 Mich App at 294, quoting *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008). "Absent ambiguity, the words of the trust document itself are the most indicative of the meaning and operation of the trust." *In re Stillwell Trust*, 299 Mich App at 294. A latent ambiguity can exist if the language and the meaning of the language is clear, but an extrinsic fact allows the possibility of more than one meaning. *In re Woodworth Trust*, 196 Mich App 326, 328; 492 N.W.2d 818 (1992).

Despite the disparity between the Trust Amendments and the statements of advance against inheritance, the language in the Amendments – that no interest should accrue on the loans referenced – is unambiguous, and indicates that Thelma intended that the distributions to her sons be interest-free. As part of the Trust itself, the Amendments are more indicative of Thelma's intent than the statements. This is further evidenced by the fact that Thelma signed the Amendments, but did not sign the statements of advance against inheritance. Thus, the probate court clearly erred when it found that Thelma intended to impose a 4% interest rate on the distributions from Trust funds made to her sons.

## D. ATTORNEY FEES AWARDED TO RESPONDENT

Next, petitioner argues that the probate court erred when it ordered that respondent receive attorney fees as an administrative expense of the Trust.

Generally, to preserve an issue for appellate review, "it must be raised, addressed, and decided by the lower court." *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014) (citation and quotation marks omitted). Petitioner failed to preserve this issue by challenging the probate court's award of attorney fees at the hearing regarding the petition to compel, or at the hearing on the motion for entry of an order.

"[W]e review the court's decision whether to award attorney fees and the determination of the reasonableness of the fees for an abuse of discretion." *In re Temple Marital Trust*, 278 Mich App at 128. However, unpreserved issues are reviewed for plain error affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*. at 328-329 (citations and quotation marks omitted).

"[A]bsent authorization by statute, court rule, or contract, attorney fees are not recoverable." *In re Temple Marital Trust*, 278 Mich App at 129. In its opinion and order regarding the petition to compel relief, the probate court awarded both petitioner and respondent attorney fees to be paid as an administrative expense of the Trust. On the record at that hearing, the probate court failed to specify a basis for its ruling. However, at the hearing on petitioner's petition for payment of attorney fees, it stated: "The Court does find that there was plenty of work done in this matter for both sides and the Court feels that both attorneys meet all the qualifications necessary under the statutes and the law for the award of attorney fees that the

Court did award and the Court is going to approve those up and through the time of the Hearing."

The Trust itself grants the trustee the authority to employ attorneys to assist with the administration of the Trust. Further, MCL 700.7904, provides:

> (1) In a proceeding involving the administration of a trust, the court, as justice and equity require, may award costs and expenses, including reasonable attorney fees, to any party who enhances, preserves, or protects trust property, to be paid from the trust that is the subject of the proceeding.

> (2) Subject to subsection (3), if a trustee participates in a civil action or proceeding in good faith, whether successful or not, the trustee is entitled to receive from trust property all expenses and disbursements including reasonable attorney fees that the trustee incurs in connection with its participation.

> (3) A court may reduce or deny a trustee's claim for compensation, expenses, or disbursements with respect to a breach of trust.

Thus, the probate court had the discretion to award respondent attorney fees as an administrative expense of the Trust, and acted within that discretion by awarding respondent attorney fees, despite the court's findings that he breached his fiduciary duties by failing to properly account and by self-dealing.

As petitioner argues, in previous decisions this Court has concluded that attorney fees were properly awarded to a fiduciary because the lower court found no wrongdoing. For example, in *In re Hammond Estate*, 215 Mich App 379, 387; 547 NW2d 36 (1996), this Court concluded that "[a]ttorney fees incurred by an executor to defend against a petition for his removal are properly chargeable against the estate where no wrongdoing is proved." The same principle was applied to trustees under the statutory framework of EPIC in *In re Temple Marital Trust*. There, this Court ruled that the trial court did not err in awarding attorney fees to trustees defending themselves against charges of wrongdoing because there was no proof that the trustees did anything improper. *In re Temple Marital Trust*, 278 Mich App at 135-137. However, these cases were decided prior to the enactment of MCL 700.7904, which clearly grants a probate court the discretion to award attorney fees to a trustee, even if that trustee has breached his or her fiduciary duties.

### E. WRITTEN ORDER

Finally, petitioner argues that the probate court erred when it entered an order inconsistent with its oral opinion. Specifically, he asserts that the probate court stated on the record that respondent could remedy his breach of fiduciary duties by filing a proper accounting of Trust assets, but did not include this in its written order, and that the order should be revised. However, petitioner provides no legal support for this argument. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007). Thus, this issue is abandoned.

Looking past the abandonment problem, we conclude on the merits that the probate court need not revise the order. The probate court stated, on the record at the hearing regarding the

petition to compel relief, that respondent would not be removed as trustee because he had a capable attorney who could help him close the matter with proper accounting, but did not include any accounting mandate in its February 9, 2016 order. " '[A] court speaks through its written orders and judgments, not through its oral pronouncements.' " *Sterling Hts v Chrysler Group, LLC*, 309 Mich App 676, 682; 873 NW2d 342 (2015), quoting *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Thus, to the extent that the written order varies from the probate court's statements on the record, the written order controls. The court had the opportunity to include language regarding accounting in the order, but chose not to.

## F. CASE EVALUATION SANCTIONS

As part of his cross-appeal, respondent first argues that the probate court erred as a matter of law when it denied his motion for case evaluation sanctions.

"A trial court's decision whether to grant case evaluation sanctions presents a question of law, which this Court reviews de novo." *Tevis v Amex Assurance Co*, 283 Mich App 76, 86; 770 NW2d 16 (2009). The interpretation and application of court rules is reviewed de novo. *Ivezaj v Auto Club Ins Ass'n*, 275 Mich App 349, 356; 737 NW2d 807 (2007).

We hold that the probate court did not err when it denied respondent's motion for case evaluation sanctions. Under MCR 2.403(O)(1), "[i]f a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." A "verdict" under this rule includes:

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation. [MCR 2.403(O)(2).]

"Michigan courts, recognizing that our Supreme Court intended what it plainly stated, have consistently ruled that MCR 2.403(O)(2) contains a specific and precise definition of 'verdict.' " *Jerico Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 29; 666 NW2d 310 (2003). There are three exceptions to the mandatory imposition of case evaluation sanctions:

Under the first exception, the trial court may decline to award costs in a case involving equitable relief when the verdict (considering both equitable and monetary relief) is more favorable to the rejecting party than the evaluated award. The second exception applies only to dramshop actions. Finally, the trial court "may, in the interest of justice, refuse to award costs" when the judgment is "entered as a result of a ruling on a motion after the party rejected the [case] evaluation" under MCR 2.403(O)(2)(c). [*Allard v State Farm Ins Co*, 271 Mich App 394, 398-399; 722 NW2d 268 (2006) (citations omitted; alteration in original).]

In the opinion and order regarding the petition to compel relief, the probate court stated: "IT IS FURTHER ORDERED that separate Judgments shall issue against both Craig Poston and Carl Poston for the difference between the amounts of their prior over-distribution and the

-10-

amount of their current outstanding loan balance (including interest)[.]"  Based on the record provided to this Court, the probate court has not yet issued judgments against either petitioner or Carl III.  The most recent order in the lower court file provided to this Court indicates that a hearing was held on July 25, 2016, regarding respondent's motion for approval of accountings and entry of judgment.  However, the order does not include judgments against petitioner and Carl III.  Instead, the order states that counsel for petitioner and Carl III may examine the records provided by respondent.  Thus, no verdict, as defined in MCR 2.403(O)(2), has been issued, and the probate court did not err when it denied respondent's motion for case evaluation sanctions.  Although the probate court denied the motion on an alternative basis, this Court "will not reverse [a] court's order when the right result was reached for the wrong reason." *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).  Moreover, our  determination that the probate court erred by imposing a 4% interest rate on the loans made from Trust funds will necessarily affect the final judgments issued.

## G.  ATTORNEY FEES – PETITIONER

Next, respondent argues that the probate court abused its discretion when it awarded full attorney fees to petitioner.  Specifically, he contends that the probate court should have reduced its award of attorney fees to petitioner based on the claims made against him that failed.

Again, to preserve an issue for appellate review, "it must be raised, addressed, and decided by the lower court." *Mouzon*, 308 Mich App at 419 (citation and quotation marks omitted).  Respondent failed to preserve this issue by challenging the probate court's award of attorney fees at the hearing regarding the petition to compel relief pursuant to MCL 700.1308, or at the hearing on the motion for entry of an order.  Respondent did challenge the petition for payment of petitioner's attorney fees, but the probate court had already entered the underlying opinion and order awarding the attorney fees.

Generally, "we review the court's decision whether to award attorney fees and the determination of the reasonableness of the fees for an abuse of discretion." *In re Temple Marital Trust*, 278 Mich App at 128.  However, unpreserved issues are reviewed for plain error affecting substantial rights. *Rivette*, 278 Mich App at 328.  "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*. at 328-329 (citations and quotation marks omitted).

Respondent abandoned this argument.  Beyond citing MCL 700.7904(1), which provides that a court may award attorney fees to a party who preserves trust property, and caselaw stating this general principle, respondent does not adequately explain his assertion that the probate court abused its discretion by not reducing the attorney fees awarded to petitioner for those claims against respondent that failed.  "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Nat'l Waterworks, Inc*, 275 Mich App at 265.

Regardless, the probate court did not abuse its discretion when it awarded petitioner attorney fees as an administrative expense of the Trust.  MCL 700.7904 provides, in pertinent part:

(1) In a proceeding involving the administration of a trust, the court, as justice and equity require, may award costs and expenses, including reasonable

attorney fees, to any party who enhances, preserves, or protects trust property, to be paid from the trust that is the subject of the proceeding.

Ultimately, the petition to compel relief filed by petitioner enhanced, preserved, and protected Trust property, because the probate court denied respondent a trustee fee as a remedy for respondent's breach of fiduciary duties.

## H.  BREACH OF FIDUCIARY DUTY – ACCOUNTING

Third, respondent argues that the probate court clearly erred when it found that respondent breached his duty to inform and account.  Although respondent admits that he failed to provide accountings for the loans he took from Trust assets during Thelma's lifetime, he asserts there is no evidence that any beneficiary requested this information prior to Thelma's death.

A probate court's factual findings are reviewed for clear error, "while the court's dispositional rulings are reviewed for an abuse of discretion." *In re Temple Marital Trust*, 278 Mich App at 128.  "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App at 549.  An abuse of discretion occurs when the lower court's decision is outside the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388.

As stated above, "the duties imposed on [a] trustee are determined by consideration of the trust, the relevant probate statutes and the relevant case law." *In re Green Charitable Trust*, 172 Mich App at 312.  The Trust itself provides that any income beneficiary may demand in writing, from the trustee, a statement of the financial condition of the Trust.  Further, the MTC imposes accounting and notification requirements on trustees.  Pursuant to MCL 700.7811(1), "[a] trustee shall keep adequate records of the administration of the trust."  In addition, MCL 700.7814 provides, in pertinent part:

(1) A trustee shall keep the qualified trust beneficiaries reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests.  Unless unreasonable under the circumstances, a trustee shall promptly respond to a trust beneficiary's request for information related to the administration of the trust.

(2) A trustee shall do all of the following:

(a) Upon the reasonable request of a trust beneficiary, promptly furnish to the trust beneficiary a copy of the terms of the trust that describe or affect the trust beneficiary's interest and relevant information about the trust property.

(b) Subject to subsection (6), within 63 days after accepting a trusteeship, notify the qualified trust beneficiaries of the acceptance, of the court in which the trust is registered, if it is registered, and of the trustee's name, address, and telephone number.

(c) Subject to subsection (6), within 63 days after the date the trustee acquires knowledge of the creation of an irrevocable trust, or the date the trustee acquires

knowledge that a formerly revocable trust has become irrevocable, whether by the death of the settlor or otherwise, notify the qualified trust beneficiaries of the trust's existence, of the identity of the settlor or settlors, of the court in which the trust is registered, if it is registered, and of the right to request a copy of the terms of the trust that describe or affect the trust beneficiary's interests.

(d) Notify the qualified trust beneficiaries in advance of any change in the method or rate of the trustee's compensation.

Respondent admits that he failed to properly account for the loans he and Kathy took from Trust funds after transferring those funds to personal accounts at UBS and MSB. Indeed, the record supports that fact. At the hearing on the petition to compel relief, Kathy testified regarding the loans. The probate court asked that she return the second day with an accounting of the distributions they made to themselves from Trust funds and the amounts they had paid back. When she returned the next day, the probate court questioned the accounting she provided, stating that it included "quote 'loans' which were never brought before me in anybody's trial brief." Further, the statement of loans and distributions respondent provided to petitioner as an attachment to the letter he sent on July 10, 2014, admitted into evidence as Exhibit 30, does not appear to comport with respondent's or Kathy's testimony regarding the funds they borrowed from the Trust. At the hearing, respondent said that he borrowed $31,000 and $50,000 from Trust funds in 2011, but the loans and distributions form he provided to petitioner did not account for these loans. This amounted to a clear breach of his duty to keep adequate Trust records under MCL 700.7811(1).

Respondent contends that he did not violate any duties under MCL 700.7814, because petitioner and Carl III did not become qualified trust beneficiaries until Thelma's death, and MCL 700.7814(3) only requires an annual accounting of trust income. Thus, according to respondent, when petitioner requested an accounting as part of his petition to compel relief, he was not required to provide an accounting to petitioner at that time because it had been less than 8 months since Thelma's death. Yet, even if petitioner and respondent did not become qualified trust beneficiaries until Thelma's death, respondent's argument ignores the mandate in MCL 700.7814(1), that "a trustee shall promptly respond to a trust beneficiary's request for information related to the administration of the trust." From the record, it appears that respondent did not submit an accounting to the probate court until June 3, 2016, well over a year after petitioner filed the petition to compel relief on January 12, 2015.

## I. DENIAL OF TRUSTEE FEE

Finally, respondent argues that the probate court abused its discretion when it denied him a trustee fee.

Respondent has also abandoned this issue by citing no legal authority in support of his argument that the probate court abused its discretion when it denied him a trustee fee. Again, "[a] party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Nat'l Waterworks, Inc*, 275 Mich App at 265.

Nevertheless, the probate court did not abuse its discretion when it denied respondent a trustee fee. The Trust provides that trustees shall be entitled to reasonable compensation. MCL 700.7708(1) also provides that "[i]f the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances."

-13-

However, a probate court may remedy a trustee's breach of trust by reducing or denying compensation to that trustee. MCL 700.7901(2)(h). As noted above, defendant breached his fiduciary duties when he engaged in self-dealing and failed to provide proper accountings for the Trust. Rather than remove respondent as trustee, the court remedied his breaches by denying compensation.

We affirm the probate court's February 9, 2016 order in part, reverse in part, and remand to the probate court for further proceedings consistent with this opinion. We affirm the probate court's March 7, 2016 orders granting the petition for payment of petitioner's attorney fees, and denying respondent's motion for case evaluation sanctions. No costs, neither party having prevailed in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

-14-