*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF RIVER ROUGE,

      Petitioner-Appellee,

UNPUBLISHED
May 16, 2019

v

DTE ELECTRIC COMPANY and EES COKE
BATTERY, LLC,

      Respondents-Appellants.

No. 341331
Wayne Circuit Court
LC No. 17-003096-AA

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Respondents, DTE Electric Company (DTE) and EES Coke Battery, LLC (EES), appeal by leave granted[1] the circuit court's order setting aside a decision of the State Tax Commission (STC), which approved six tax exemption certificates issued pursuant to Part 59 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.5901 *et seq.* We reverse and remand for reinstatement of the STC's decision granting the tax exemption certificates.

## I. FACTS AND PROCEDURAL HISTORY

At issue in this case are tax exemption certificates that can be granted under Part 59 of the NREPA. Briefly, such certificates are available for air pollution control equipment if certain requirements are met. See MCL 324.5902; MCL 324.5903. If granted, the certificates exempt property from sales tax, use tax, and taxes levied under the General Property Tax Act (GPTA), MCL 211.1 *et seq.* See MCL 324.5904(1). In this case, the six certificates combined would exempt over $60M in property from these taxes.

---

[1] *River Rouge v DTE Electric Co*, unpublished order of the Court of Appeals, entered May 11, 2018 (Docket No. 341331).

The process for obtaining the certificates involves two state agencies, the STC and the Michigan Department of Environmental Quality (MDEQ). Pursuant to MCL 324.5902(1), an application must be filed with the STC. Under MCL 324.5902(2), the STC must then seek approval of the MDEQ before granting a certificate.[2] The MDEQ is tasked with determining whether "the facility[3] is designed and operated primarily for the control, capture, and removal of pollutants from the air, and is suitable, reasonably adequate, and meets the intent and purposes of part 55[ of the NREPA, MCL 324.5501 *et seq*.,] and rules promulgated under that part . . . ." MCL 324.5903. If the MDEQ determines that the facility meets these requirements, it "shall notify the state tax commission, which shall issue a certificate." MCL 324.5903. After a certificate is issued, the STC must mail certified copies to the applicant, the Department of Treasury, and the assessor of the local taxing unit. MCL 324.5905.[4] Pursuant to MCL 324.5907, "A party aggrieved by the issuance, refusal to issue, revocation, or modification of a pollution control tax exemption certificate may appeal from the finding and order of the state tax commission in the manner and form and within the time provided by the administrative procedures act of 1969," MCL 24.201 *et seq*.

In this case, four of the six certificates were initially granted in 2011. With respect to those certificates, the MDEQ did not conduct any analysis of the applications. Rather, the STC referred to a list of commonly approved air pollution control equipment created by the MDEQ and approved by the STC.[5] Based on this list, the STC alone concluded that the exemptions

---

[2] MCL 324.5902(2) states that the STC must seek approval from the "department." The "department" is defined as the "director of the department of natural resources or his or her designee to whom the director delegates a power or duty by written instrument." MCL 324.301. Through an executive order that was effective October 1, 1995, the MDEQ was created, and environmental functions of the Department of Natural Resources were transferred to the MDEQ. MCL 324.99903; *Attorney Gen ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 656 n 1; 741 NW2d 857 (2007).

[3] What amounts to a "facility" is defined in MCL 324.5901: "machinery, equipment, structures, or any part or accessories of machinery, equipment, or structures, installed or acquired for the primary purpose of controlling or disposing of air pollution that if released would render the air harmful or inimical to the public health or property within this state."

[4] If it is denied, notice of the denial must be sent to these same entities. MCL 324.5905.

[5] As this Court explained in *Sterling Heights v Chrysler Grp, LLC*, 309 Mich App 676, 686-687; 873 NW2d 342 (2015):

> In a 2011 appropriations act, the Legislature directed the MDEQ to "enter into a memorandum of understanding with the department of treasury to develop a process for the review and approval of tax exemption certificates in accordance with the list of commonly approved air pollution control equipment adopted by the state tax commission . . . ." 2011 PA 63, art VII, part 2, § 311. Pursuant to this directive, the [STC], Department of Treasury, and MDEQ signed a memorandum of understanding in which they agreed on a process to create a list of commonly approved equipment. The memorandum provided that the MDEQ

were appropriate. This Court concluded that the STC could not approve tax certificates sought under Part 59 of the NREPA without the MDEQ first making its own determination regarding whether the certificates meet the standards stated in MCL 324.5903. This Court directed that these applications be remanded to the MDEQ and STC; the MDEQ was directed to conduct the necessary review, and after forwarding its findings to the STC, the STC was directed to reconsider its decision to issue the certificates. *River Rouge v EES Coke Battery Co, LLC*, unpublished per curiam opinion of the Court of Appeals, issued December 9, 2014 (Docket Nos. 314789, 315621, 315632-315635, and 315638) ("*River Rouge I*").

The remaining two certificates were initially granted by the STC in 2014, and in the same manner as the prior four certificates (i.e., without review by the MDEQ). River Rouge appealed to the circuit court, which held the matter in abeyance pending this Court's decision in *River Rouge I*. After this Court's decision was issued, the circuit court set aside the STC's approval of these 2014 certificates and remanded with instructions that the MDEQ review the certificates and report its findings to the STC, so that the STC could then issue the certificates if appropriate.

It is undisputed that all six applications were, in fact, returned to the MDEQ, so that the MDEQ could conduct the review required by MCL 324.5903. Over the course of several months in 2016, the MDEQ sent letters to the STC with its findings. Each letter stated that the requested exemption should be granted, and in the full amount requested. Each letter contained a sentence stating that the MDEQ "has reviewed this application to determine tax exemption qualification solely based on the *State Tax Commission List of Commonly Approved Air Pollution Control Equipment* approved on June 12, 2012." The STC was directed to contact "Becky Radulski" with any questions.

River Rouge objected to the issuance of the certificates, resulting in a hearing before the STC. At this hearing, River Rouge presented no evidence or argument questioning whether the equipment at issue met the standard stated in MCL 324.5903. Rather, River Rouge contended that based on the language of the MDEQ's letters, the MDEQ's review amounted to consulting the list of commonly approved equipment and rubber-stamping the applications. Based on this Court's decision in *River Rouge I*, and this Court's subsequent decision in *Sterling Heights v Chrysler Grp, LLC*, 309 Mich App 676, 686; 873 NW2d 342 (2015), River Rouge argued that simply consulting the list was not an adequate method of review.

---

would submit to the Commission a list of pollution control equipment that the MDEQ commonly approved. The Commission would then approve that list. The MDEQ additionally provided that it would assist in the review of petitions "where the equipment is not identified on the annual pollution control equipment list approved by the MDEQ."

The STC approved this list of "Commonly Approved Air Pollution Control Equipment" on June 12, 2012. The list is publically available on the internet. See <https://www.michigan.gov/documents/treasury/STC_Commonly_Approved_Air_Pollution_Control_Equipment_398157_7.pdf> (accessed March 27, 2019).

However, Radulski appeared at the hearing, and explained that she had personally reviewed each application. Radulski explained the steps she took to analyze the applications, which included reviewing the application and materials submitted with the application. These materials included an engineer's report, which stated that the application had been reviewed and determined to be accurate. Also included was a summary explaining how the air pollution control equipment works and how emissions are being removed, and detailed cost breakdowns of the equipment. Radulski explained that she conducts these reviews for the entire state. If she came across something that she was not familiar with, she would contact the STC and ask for more information from the applicant. Written correspondence showed that Radulski indeed asked some questions with regard to the present applications, which were forwarded by the STC to DTE and EES. DTE and EES answered these questions, and the information was passed along to Radulski. Radulski would also consult with other colleagues who had processed these types of applications in the past if necessary. If she had questions about how a facility was using the equipment, or had concerns regarding the equipment, she would speak to inspectors who had visited the facility for their input. With respect to the present applications, Radulski spoke with an inspector who had visited the facilities at issue. Radulski did review the list of commonly approved equipment as part of her review process. The list includes certain types of equipment that generally satisfy the statute, and also items that do not. Thus, part of Radulski's analysis was to look to see if the application included items that, according to the list, did not satisfy the statute.

After hearing Radulski's testimony, the STC voted unanimously to approve the tax exemption certificates. River Rouge then appealed to the circuit court. River Rouge again argued that the MDEQ's review consisted solely of looking to the list of commonly approved equipment and rubber-stamping the applications. River Rouge contended that Radulski's testimony should be ignored because Radulski appeared to be speaking in general terms regarding how she reviewed applications, not in terms of how she reviewed the specific applications at issue. The circuit court set aside the STC's decision to approve the certificates, explaining that the MDEQ's letters stated "in big bold letters" that the MDEQ relied on the list of commonly approved equipment. The circuit court held that the MDEQ did not properly conduct its review, and that without an appropriate review by the MDEQ, the STC's decision was not supported by substantial evidence and was in violation of Part 59 of the NREPA. The circuit court set aside the decision to grant the certificates and remanded the matter to the STC with directions that it again refer the applications to the MDEQ for review.

DTE and EES filed an application for leave to appeal in this Court. This Court granted the application. *River Rouge v DTE Electric Co*, unpublished order of the Court of Appeals, entered May 11, 2018 (Docket No. 341331). We now conclude that the circuit court erred by setting aside the STC's decision, and remand for reinstatement of the STC's decision to grant the tax exemption certificates.

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

As this Court explained in *Sterling Heights v Chrysler Grp, LLC*, 309 Mich App 676, 680-681; 873 NW2d 342 (2015):

> A party may appeal the Commission's decision on a pollution control tax-exemption certificate in the circuit court.  MCL 324.5907.  The circuit court must set aside the agency's order if, among other reasons, the decision violates a statute or it was not supported by competent, material, and substantial evidence.  MCL 24.306(1).

> This Court reviews the circuit court's decision to determine whether the circuit court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Monroe v State Employees' Retirement Sys*, 293 Mich App 594, 607; 809 NW2d 453 (2011) (quotation marks and citation omitted).  Substantial evidence is "evidence that a reasoning mind would accept as sufficient to support a conclusion." *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002).  Substantial evidence is "more than a mere scintilla but less than a preponderance of the evidence." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 584; 701 NW2d 214 (2005) (quotation marks and citation omitted).

> This Court reviews de novo questions of statutory interpretation.  *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010).  When interpreting a statute, our goal is to give effect to the intent of the Legislature as expressed through the statute's language.  *Id*. If the statute's language is not ambiguous, we must enforce the statute as written. *Id*.

### B.  DISCUSSION

We begin by noting the narrow issue before us.  River Rouge has never presented any evidence or argument attempting to demonstrate that the equipment at issue does not meet the requirements stated in MCL 324.5903.  In fact, at the hearing before the STC, River Rouge acknowledged that in all likelihood, DTE and EES are entitled to the exemptions they have requested.  And at this point, it is undisputed that MDEQ did, in fact, review the applications and provide its findings to the STC.  Thus, this case does not present a situation where the MDEQ conducted no review whatsoever.

Rather, in this case, the question solely concerns *how* the MDEQ went about reviewing the applications.  River Rouge maintains that the MDEQ only looked at the list of commonly approved equipment to determine whether the exemptions should be granted.  River Rouge points out that in other, entirely unrelated cases, the MDEQ's determinations have later been deemed erroneous, and the amount of exemptions was reduced.  River Rouge posits that in this case, it is possible that if the MDEQ examines the applications more thoroughly, it might conclude that the tax exemption certificates should be altered to exempt a lower dollar amount.

But again, River Rouge does not, and has never, provided any evidence or argument attempting to demonstrate that such an error was actually made in this case. Rather, River Rouge only hopes that if the MDEQ examines the applications again, it will find something that triggers the MDEQ to lower the dollar amount of property covered by the tax exemption certificates.

Thus, as framed by the parties, the question essentially comes down to whether the MDEQ's analysis went beyond simply looking at the list of commonly approved equipment. The circuit court agreed with River Rouge's contention that the MDEQ's review was so limited. Assuming, *arguendo*, that the STC's decision should be set aside if its analysis was limited to reviewing the list of commonly approved equipment, the circuit court erred because it is quite clear that the MDEQ's analysis was not limited in such a manner.

While the MDEQ's letters include language indicating that that its decisions were solely based on the list, Radulski's explanation to the STC made it abundantly clear that she used her engineering expertise and knowledge gained from having reviewed many similar applications to determine whether the exemptions should be approved. The MDEQ did not simply rubber-stamp the applications as River Rouge contends. Rather, the MDEQ analyzed the applications and applied its own expertise to determine if the exemptions should be granted. While the list was consulted, nothing prevents the MDEQ from using the list as part of its analysis. The circuit court ignored Radulski's explanation before the STC, and decided that the statements in the letters were conclusive. It was not the circuit court's role to reweigh the evidence. Rather, the circuit court's role was to determine whether the STC's decision was in violation of a statute or not supported by substantial evidence. *Id*. at 681. Radulski's testimony, which was not contested before the STC, clearly explained that she did far more than simply rely on the list. The circuit court should not have disturbed the STC's decision.

River Rouge essentially makes two arguments in an attempt to vitiate the import of Radulski's testimony. Neither has any merit. River Rouge first contends that the statements of counsel made at the hearing before the STC are not evidence and must be ignored. Counsel's statements are not needed to decide the issue. Rather, it is Radulski's testimony before the STC that is of significance. While we have no qualms with the premise of the argument, it is simply not a relevant concern.

Turning to Radulski's testimony, River Rouge contends that Radulski only spoke in general terms regarding what a typical examination of an application seeking a tax exemption would look like. Thus, according to River Rouge, Radulski failed to explain the steps taken with regard to these particular applications, rendering her explanation without any probative value. River Rouge is simply wrong. Radulski explained at the hearing that her "duty in respect *to these cases* was to evaluate the application that came from the State Tax Commission, which came from each property owner." (Emphasis added.) Counsel then explained to Radulski that she would be asked to "describe the process you went through [with] these six applications." Counsel asked if there was "anything significantly different from one application to the other regarding the six we're discussing?" Radulski responded, "No, they were – no, they were similar." Counsel responded by stating, "Okay. So could you walk – the testimony you're about to give is [to] point out if there's anything unique about any particular application. But otherwise, can you describe from the moment you first see an application *in these cases* what actions you took[?]" (Emphasis added.)

It was quite clear, then, that Radulski's testimony explained the steps she took with regard to the six specific applications at issue. While Radulski may have been speaking about how she generally approaches her review of any application, it is quite obvious that the manner of review she then described was that undertaken with regard to the six specific applications at issue in this case. From the very outset of her testimony, it was obvious that Radulski understood that she was being asked to describe how she went about reviewing the applications at issue in this case. It should be no surprise that her method of review is similar for other applications as well. The fact that Radulski reviews all applications she receives in a similar manner does not undermine her credibility, nor does it render her testimony irrelevant. Radulski was clearly explaining the process that she took to review the applications at issue, even if that same process is followed by Radulski when she reviews other applications. As such, there is no basis to ignore Radulski's testimony, and accordingly, no reason to disturb the STC's decisions to grant the exemptions at issue.

Reversed and remanded for reinstatement of the STC's decision to grant the requested tax exemptions. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto