VanZANDT v STATE EMPLOYEES' RETIREMENT SYSTEM

Docket No. 251666. Submitted January 5, 2005, at Lansing. Decided
   March 31, 2005. Approved for publication May 26, 2005, at 9:15
   a.m.

Deborah VanZandt applied with the State Employees' Retirement
   System for a nonduty disability retirement, listing depression as
   her incapacity. The State Employees' Retirement Board denied her
   application after considering the reports of independent medical
   examiners (IMEs) hired by the board. VanZandt requested an
   administrative hearing. The hearing officer issued a proposal for
   decision recommending that the application be granted after
   concluding that VanZandt was totally and permanently disabled
   and unable to maintain gainful employment. The board rejected
   the hearing officer's recommendation and again denied a nonduty
   disability retirement. On VanZandt's petition for judicial review,
   the Ingham Circuit Court, James R. Giddings, J., vacated the
   board's decision and remanded the case to the board with instruc-
   tions to ignore evidence relating to the petitioner's lifestyle and
   activities, ignore the testimony of one of the IMEs, and accept the
   deposition evidence from VanZandt's treating physicians, which
   depositions were used in earlier worker's compensation and social
   security proceedings. On remand, the board again denied the
   petitioner a nonduty disability retirement after relying on the
   evidence that the circuit court ordered not to be considered. The
   State Employees' Retirement System appealed by leave granted.

   The Court of Appeals *held*:

   1. The circuit court erred by ordering the board to issue
   specific findings and come to a particular result. The order is
   inconsistent with well-established authority holding that circuit
   courts may not direct the manner in which an agency exercises its
   discretion. A reviewing court may not replace the board's reason-
   able views with the court's own.

   2. The circuit court erred by reversing the board's decision
   because that decision was supported by competent, material, and
   substantial evidence on the whole record, was not contrary to law,
   and was not arbitrary, capricious, or a clear abuse of its discretion.
   MCL 24.306(1). The competent, material, and substantial evidence

was the testimony of two IMEs, both advisors to the board and both of whom stated that VanZandt was not totally and permanently incapacitated from working. The findings of the IMEs are directly probative of the totality and permanency of the VanZandt's disability and are material. A reviewing court does not resolve conflicts of evidence presented or pass on the credibility of witnesses. As the administrative fact-finder, the board had the unique province to weigh the credibility of the IMEs against VanZandt's testimony and that of her treating physicians.

3. The circuit court also erred in instructing the board to avoid evidence relating to VanZandt's lifestyle and her ability to function outside the work setting as being immaterial and irrelevant. MCL 24.275 permits the board to admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent people in the conduct of their affairs. Evidence that VanZandt was able to maintain a home and care for three small children, two of whom had learning disabilities, is probative relative to whether she could function in a workplace setting in which, like her state job, her primary responsibility would be supervising the young. Reasonably prudent people would rely on such evidence in determining the validity of VanZandt's claim. This evidence supported the board's conclusion that the petitioner's disability did not prevent her from employment reasonably related to her past experience and training.

4. In determining this claim for nonduty disability retirement, the board considered cases involving determinations of duty-related disability retirement. This was not misplaced or contrary to law, as the circuit court determined. The board's reliance on cases applying MCL 38.21, the duty-related disability retirement statute, was not legal error requiring reversal, particularly in the absence of case law expressly construing MCL 38.24, the nonduty disability retirement statute.

Reversed.

CIVIL SERVICE — STATE EMPLOYEE — RETIREMENT — NONDUTY DISABILITY RETIRE-
MENT — EVIDENCE.

Evidence relating to lifestyle and ability to function outside the work setting is material and relevant to the determination of whether a person is totally and permanently disabled and qualifies for a nonduty disability retirement from the State Employees' Retirement System; the State Employees' Retirement Board may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent people in the conduct of their affairs

to determine whether the person's disability prevents him or her from employment reasonably related to past experience and training (MCL 24.275).

*Cooper, Bender & Iddings, P.C.* (by *David J. Cooper*) (*Daryl Royal,* of counsel), for the petitioner.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Tonatzin Alfaro Maiz*, Assistant Attorney General, for the respondent.

Before: JANSEN, P.J., and MURRAY and DONOFRIO, JJ.

JANSEN, P.J. Respondent appeals by leave granted a circuit court opinion and order vacating its order denying petitioner's claim for state employee nonduty disability retirement pursuant to MCL 38.24. Petitioner's claim for nonduty disability retirement is based on depression, the onset of which she traces back to an incident at her workplace. We reverse.

Petitioner, a youth specialist with the Department of Social Services at the Adrian Training School for youthful felony offenders, claimed that on June 4, 1994, an incident occurred in which a coworker criticized her in front of colleagues. Petitioner stated that she was hurt and shocked by this incident, and, on July 19, 1994, she went on stress leave. Subsequently, petitioner returned to work and continued to work intermittently until April or May 1997. On September 24, 1997, petitioner filed an application for nonduty disability retirement listing her incapacity as "depression." At that time, petitioner had earned service credit of over twelve years. Petitioner's application listed the cause of the incapacity as the June 4, 1994, incident. Petitioner claimed that her incapacity limited her ability to continue work because of "problems with depression, feeling paranoid, incompetent, and incapable." The State

Employees' Retirement Board (the Board) denied petitioner's request for duty and nonduty disability retirement on May 10, 2000. The Board's denial was based on the reports of Stuart Fenton, M.D., a psychiatrist; and Emmanuel Obianwu, M.D., an orthopedic surgeon. Petitioner appealed the denial and requested an administrative hearing. Subsequently, an administrative hearing was conducted. On January 3; 2002, the hearing referee issued a proposal for decision (PFD) recommending that retirement be granted. The hearing referee concluded that petitioner was totally and permanently disabled from any gainful employment. Respondent filed exceptions to the PFD.

On April 25, 2002, the Board issued a decision and order adopting in part and rejecting in part the hearing referee's findings of fact and conclusions of law and denying nonduty disability retirement to petitioner. The Board concluded that petitioner failed to show by a preponderance of the evidence that she was totally and permanently disabled. The Board commented that petitioner's responsibilities as guardian of her niece's three children were similar to her responsibilities in her position at the Adrian facility. The Board also concluded that the hearing referee inappropriately considered certain deposition evidence because "[t]he applicable law for workers' compensation and social security provide[s] different review standards for disability than does the State disability retirement statute."

The circuit court vacated the Board's decision and remanded the matter to the Board on May 13, 2003. The court criticized the Board for its "overweening substitution of immaterial and irrelevant factual findings for those contained in the PFD." The circuit court opined that the Board's findings regarding petitioner's

smoking habits, housekeeping activities, and guardianship of the three children were not relevant to a determination whether petitioner was totally and permanently disabled and that the Board erred in considering such evidence. The circuit court also held that the Board erred in failing to consider the depositions of the psychiatrists obtained in the prior worker's compensation and social security proceedings. The circuit court further concluded that the evidence presented by Dr. Fenton was incompetent. The circuit court ordered that, on remand, the Board consider all the competent and material evidence, and specifically disregard Dr. Fenton's testimony.

On June 27, 2003, a revised Board order was filed with the circuit court. Again, this order denied petitioner nonduty disability retirement, relied on the opinion of Dr. Fenton, and relied on petitioner's lifestyle information. Petitioner moved to enforce the circuit court's order, and for respondent to be held in contempt for failure to comply with the order. Respondent filed an application for leave to appeal in this Court, and we granted the application.

On appeal, respondent argues that the circuit court clearly erred in determining that the Board's decision was not authorized by law and supported by competent, material, and substantial evidence. We agree.

A final agency decision is subject to court review but it must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28;[1]

---

[1] Const 1963, art 6, § 28 provides in part: "This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record."

MCL 24.306(1)(d).[2] "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *St Clair Intermediate School Dist v Intermediate Ed Ass'n/Michigan Ed Ass'n*, 218 Mich App 734, 736; 555 NW2d 267 (1996). If there is sufficient evidence, the circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result. *Black v Dep't of Social Services*, 195 Mich App 27, 30; 489 NW2d 493 (1992). With regard to whether a decision is arbitrary or capricious, this Court in *Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 63-64; 678 NW2d 444 (2003), stated:

> To determine whether an agency's decision is "arbitrary," the circuit court must determine if it is " ' "without adequate determining principle[,] . . . fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, . . . decisive but unreasoned." ' " *St Louis v Michigan Underground Storage Tank Financial Assurance Policy Bd*, 215 Mich App 69, 75; 544 NW2d 705 (1996), quoting *Bundo v Walled Lake*, 395 Mich 679, 703 n 17; 238 NW2d 154 (1976), quoting *United States v Car-*

---

[2] MCL 24.306(1) provides in part:

[T]he court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

*  *  *

(d) Not supported by competent, material and substantial evidence on the whole record.

(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

(f) Affected by other substantial and material error of law.

*mack,* 329 US 230, 243; 67 S Ct 252; 91 L Ed 209 (1946).
"Capricious" has been defined as: " ' "Apt to change suddenly; freakish; whimsical; humorsome." ' " *St Louis, supra* at 75, quoting *Bundo, supra* at 703 n 17, quoting *Carmack, supra* at 243.

This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review. *Dignan v Pub School Employees Retirement Bd,* 253 Mich App 571, 575-576; 659 NW2d 629 (2002); *Boyd v Civil Service Comm,* 220 Mich App 226, 234-235; 559 NW2d 342 (1996). A finding is clearly erroneous where, after reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made. *Dignan, supra* at 576. Thus, the circuit court's decision will only be overturned if this Court is left with a definite and firm conviction that a mistake was made. See *Glennon v State Employees' Retirement Bd,* 259 Mich App 476, 478; 674 NW2d 728 (2003).

As an initial matter, we note that the circuit court's order required respondent to issue specific findings and come to a particular result, which is inconsistent with well-established authority holding that circuit courts may not direct the manner in which an agency exercises its discretion. *Teasel v Dep't of Mental Health,* 419 Mich 390, 409-410; 355 NW2d 75 (1984); *Vorva v Plymouth-Canton Community School Dist,* 230 Mich App 651, 655-656; 584 NW2d 743 (1998).[3] The circuit court also improperly criticized the Board for substituting its

---

[3] The order was in the nature of mandamus, and this is supported by the fact that the circuit court was planning to entertain a motion to hold

findings for those contained in the PFD. The hearing referee's PFD is a "proposal" and is to be considered a "recommendation" that respondent is "free to accept, reject, or modify," even if the PFD is supported by substantial evidence. *Dignan, supra* at 578; see also *Galuszka v State Employees Retirement System*, 265 Mich App 34, 44-45; 693 NW2d 403 (2005). Thus, the circuit court went beyond its authority and grossly misapplied the substantial evidence test. Furthermore, the circuit court clearly erred in reversing the Board's decision because the Board's decision was supported by competent, material, and substantial evidence on the whole record, was not contrary to law, and was not arbitrary, capricious, or a clear abuse of its discretion.

At all times pertinent to the proceedings below, the relevant statute for nonduty disability retirement, MCL 38. 24,[4] read as follows:

> Subject to the provisions of [MCL 38.33 and 38.34], upon application of a member, or his department head, or the state personnel director, a member who has been a state employee at least 10 years becomes totally and permanently incapacitated for duty as the result of causes occurring not in the performance of duty to the state, may be retired by the retirement board: Provided, The medical advisor after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the further performance of duty, and such incapacity is likely to be permanent and that such member should be retired.

MCL 38.24 does not define the term "medical advisor," nor is a definition provided in MCL 38.1f. However, MCL 38.6 does provide that the retirement board "shall

---

respondent in contempt. The circuit court was without authority to address the appeal from the Board decision in the manner that it did.

[4] MCL 38.24 was amended by 2002 PA 93, effective March 27, 2002.

employ such other . . . medical . . . employees as may be necessary for the proper operation of the system." Both parties acknowledge that Dr. Fenton was the medical advisor. Apparently, Dr. Fenton was the medical advisor for the purpose of determining whether petitioner was mentally incapacitated for duty and Dr. Obianwu, respondent's other medical advisor, was the medical advisor for the purpose of determining whether petitioner was physically incapacitated for duty.

The plain language of MCL 38.24 seemingly provides that respondent's discretion to retire petitioner does not arise unless and until the medical advisor, in this case Dr. Fenton or Dr. Obianwu, has certified that the applicant is totally and permanently incapacitated from working. Under this interpretation, because Dr. Fenton or Dr. Obianwu did not so certify, the respondent did not have the discretion to retire petitioner, and the circuit court's order compelling it to do so is contrary to the statute. The language of MCL 38.24 clearly provides that, although the Board has discretion in the decision whether to retire a state employee ("may be retired by the retirement board"), it cannot exercise that discretion unless and until the medical advisor certifies that the employee is incapacitated ("Provided, The medical advisor . . . shall certify that such member is . . . incapacitated . . . .").[5] Nonetheless, it is unnecessary for us to address this issue because even if respondent did

---

[5] In *Gersbacher v State Employees' Retirement System*, 145 Mich App 36, 45; 377 NW2d 334 (1985), this Court concluded that under MCL 38.21, "the Legislature intended that the retirement board have the ability to override the decision of the medical advisor and to retire an individual even without the medical advisor's certificate." However, MCL 38.21 characterizes the medical advisor's conclusion as a "recommendation," while MCL 38.24 does not provide that the medical advisor's certificate is only a recommendation. MCL 38.24 allows the retirement board to retire "Provided, The medical advisor . . . shall certify . . . ."

have the discretion to award benefits in the absence of certification by the medical advisor, the circuit court's findings are clearly erroneous. The circuit court clearly erred because the Board's denial was supported by competent, material, and substantial evidence (Dr. Fenton and Dr. Obianwu provided such evidence), was not contrary to law, and was not arbitrary, capricious, or a clear abuse of its discretion.

In reviewing whether an agency's decision was supported by competent, material, and substantial evidence on the whole record, a court must review the entire record. *Great Lakes Sales, Inc v State Tax Comm*, 194 Mich App 271, 280; 486 NW2d 367 (1992). "Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views." *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 124; 223 NW2d 283 (1974). An agency's findings of fact are afforded deference, particularly with regard to witness credibility and evidentiary questions. *THM, Ltd v Comm'r of Ins*, 176 Mich App 772, 776; 440 NW2d 85 (1989). It is not a reviewing court's function to resolve conflicts in the evidence or to pass on the credibility of witnesses. *Arndt v Dep't of Licensing*, 147 Mich App 97, 101; 383 NW2d 136 (1985).

Petitioner indicated that her mental status would not allow her to do work based on her qualifications and training because she cannot concentrate. Petitioner also testified that she has arthritis all over her body and leg problems that hinder her ability to move and cause her substantial pain. Petitioner has guardianship of her niece's three children, two of whom have learning

disabilities. She testified that her daily routine with the children included getting them up in the morning, supervising their getting ready for school, getting them to the school bus, and, often, spending three to four hours working with them on homework.

Petitioner introduced the depositions of Robert Farra, Ph.D.; James Briggs, M.D.; and Allan Clague, M.D., in support of her contention that she was totally and permanently incapacitated for the purpose of MCL 38.24. Dr. Farra, a clinical social worker and family therapist, testified that he saw petitioner over fifty times between August 1994 through February 1998. Dr. Farra's notes indicate that he diagnosed petitioner with major depression, single episode, severe without psychotic features through May 1995, and with Dysthymic Disorder (DD) from June 1995 through May 14, 1998. In a report sent to the State of Michigan Disability Determination Program dated February 25, 1998, Dr. Farra concluded that petitioner had recurrent bouts of depression that rendered her unable to work in any job. Dr. Farra reevaluated petitioner on March 8, 2001, and diagnosed her with Major Depressive Disorder (MDD), recurrent and severe without psychosis, and, again, concluded she was totally and permanently disabled from working in any job. Dr. Farra stated that the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)[6] criteria for DD and MDD are essentially the same, the only real difference being that DD "has to do with the chronicity of the disorder."[7] He also stated that choosing one diagnosis over another was merely "a matter of semantics."

---

[6] American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed) (Washington, DC: American Psychiatric Association, 1994).

[7] The DSM-IV provides the following characterization of the differential diagnosis between MDD and DD:

Dr. Briggs, a psychiatrist, saw petitioner between September 1998 and June 1999, and reevaluated her on February 1, 2001, taking a medical history and performing a mental status examination. Dr. Briggs diagnosed petitioner as suffering from DD and MDD, prescribed her antidepressant medication, but stated she did not show a sustained improvement. Dr. Briggs did not feel petitioner was well enough to work regularly, and indicated that a return to work would probably exacerbate her depressive symptoms. He opined that petitioner could not go back to her former job or "any reasonable, regular kind of work" and would never be able to.

Dr. Clague, a neurologist, examined petitioner on January 8, 2001, and found her to be suffering from a severe stress disorder and a major depressive reaction. He noted that these illnesses "have not been amenable to treatment protocols designed to return her to the active, productive work force." Dr. Clague concluded that petitioner was "totally disabled medically from carrying out any form of gainful employment for which she is qualified." Dr. Clague also opined that "this is going to be a total permanent medical disability and I never expect her to be able to return to the active, productive, gainful work force throughout the remainder of her lifetime."

---

The differential diagnosis between Dysthymic Disorder and Major Depressive Disorder is made particularly difficult by the fact that the two disorders share similar symptoms and that the differences between them in onset, duration, persistence, and severity are not easy to evaluate retrospectively. Usually Major Depressive Disorder consists of one or more discreet Major Depressive Episodes that can be distinguished from the person's usual functioning, whereas Dysthymic Disorder is characterized by chronic, less severe depressive symptoms that have been present for many years. [DSM-IV, p 348.]

The hearing referee, at the administrative hearing, admitted the depositions of Kenneth Adler, M.D.; Mark Levine, M.D.; and Gregory Sidell, M.D., three psychiatrists deposed in earlier worker's compensation and social security proceedings involving petitioner.[8] Dr. Sidell indicated in his 1995 deposition that he had treated petitioner four or five times in a two- to three month period. Dr. Sidell testified that while he could not specifically recall what his diagnosis of petitioner had been, "[i]t may have been major depression, moderate to severe and recurrent." He was "pessimistic about her chance for a full recovery because of the chronicity of her difficulties with employment and the severity of the symptoms." Dr. Sidell believed petitioner to be at risk for recurrent mental illness and determined that she was not able to work.

Dr. Adler saw petitioner on a monthly basis from July 1995 through April 1997. In his April 1996 deposition, Dr. Adler testified that his diagnosis for petitioner was major depression, and he concluded that on the deposition date, she was "totally disabled" from any work activity, although at that time her prospects for eventually returning to work were "fair."

Dr. Levine saw petitioner from April 1997 through July 1998. In his September 1998 deposition, he testified that his "diagnosis was consistent with Dr. Adler's diagnosis of major depression." Dr. Levine concluded that as of July 1998 petitioner was disabled from any kind of work.

Respondent's medical advisor, Dr. Fenton, personally examined petitioner on four occasions, and performed

---

[8] The Board determined that these depositions were improperly admitted and the circuit court held that the Board erred in failing to consider these depositions.

evaluations on evidence submitted for review on three occasions. On the basis of a review of petitioner's medical history, family history, and current level of functionality, Dr. Fenton concluded in October 1999 that petitioner suffered from DD, mild, chronic, and nondisabling. Dr. Fenton also concluded that petitioner could function if she returned to work in a different location or department and that she was not totally and permanently disabled. However, Dr. Fenton opined that he did "not feel [petitioner] can return to the same work environment that she left . . . because of [his] . . . concern that there will be an exacerbation of symptomatology, and this lady will not be able to function." Dr. Fenton suggested that the diagnosis of petitioner's physician, Dr. Clague, was not entirely credible in that he was a neurologist making psychiatric diagnoses. Dr. Fenton also stated that Dr. Farra and Dr. Briggs seemed to be confused about the difference between a diagnosis of DD and one of MDD. Specifically, Dr. Fenton explained that Dr. Farra seemed to consider the two disorders as being one and the same, when in fact they are distinct because MDD is thought to be of genetic origin and cyclic in nature, while DD is neither genetic nor cyclic.

Dr. Obianwu, an orthopedic surgeon, examined petitioner on April 17, 2000, and found that she had mild chronic lumbar disease and probably mild chronic arthritis in her left knee. However, Dr. Obianwu found that these difficulties would not prevent petitioner from working in a different position and that she was neither totally nor permanently disabled.

While petitioner's submitted examiners paint a different picture of whether she is permanently and totally disabled than is found in the opinions of Dr. Fenton and Dr. Obianwu, great deference should be given to an

agency's choice between two reasonably differing views as influenced by administrative expertise. See *Dignan, supra* at 576. Because the findings of Dr. Fenton and Dr. Obianwu are directly probative of the question of the totality and permanency of petitioner's disability, they are clearly material. Both Dr. Fenton and Dr. Obianwu are licensed physicians who personally examined petitioner, and neither concluded that petitioner was permanently incapacitated and should be retired. The opinions of Dr. Fenton and Dr. Obianwu are competent evidence, and substantial in light of the record. Further, the Board reasonably concluded that petitioner's own testimony provided support for the conclusion that she was not totally and permanently disabled. Petitioner testified that she had guardianship of three young children, two of whom had special needs. She testified at length about her care and supervision of these children, demonstrating she was able to care for them. The Board reasonably found that these duties were similar to those of petitioner's job as a youth specialist.

Although the Board determination that petitioner was not permanently disabled was in conflict with the evidence presented by her treating physicians, it is not a reviewing court's function to resolve conflicts in the evidence or to pass on the credibility of witnesses. *Arndt, supra* at 101. If the Board found the reports of Dr. Fenton and Dr. Obianwu more persuasive and more credible than petitioner's experts' testimony, it was the Board's unique province as the administrative fact-finder to do so.

The circuit court criticized Dr. Fenton's findings and the Board's reliance thereon, stating that "[i]nstead of properly adhering to its responsibility to evaluate carefully the testimony of Petitioner's treater's, the Board chose instead to ignore and dispose of it by blindly

adopting Dr. Fenton's report." The circuit court also stated that Dr. Fenton's "failure to see accurately the consistent diagnoses" of Dr. Farra and Dr. Briggs undermines the credibility of Dr. Fenton's conclusions. However, as noted, it is not a reviewing court's function to pass on the credibility of witnesses. *Arndt, supra* at 101. Dr. Fenton examined petitioner personally on a number of occasions, seemingly as the medical advisor pursuant to MCL 38.24, and his opinions were competent. The circuit court clearly erred in substituting its credibility judgment and ordering the Board to disregard the evidence Dr. Fenton presented. Assuming that respondent had the discretion to grant benefits in the absence of Dr. Fenton's certification of petitioner as permanently and totally disabled, his opinion provided substantial evidence to support respondent's decision to deny nonduty disability retirement.

The circuit court also raised issue with both the Board's and Dr. Fenton's reliance on evidence relating to petitioner's lifestyle and her ability to function outside the work setting, calling such material "immaterial and irrelevant." We respectfully disagree. MCL 24.275 permits the Board to "admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." In particular, evidence that petitioner was able to function normally in maintaining a home and caring for three small children, two of whom had learning disabilities, is probative relative to whether petitioner could function in a workplace setting in which her primary responsibility was supervising troubled youth. As such, we conclude that reasonably prudent people would rely on such evidence in determining the validity of petitioner's claim. Therefore, this evidence is material to the question whether petitioner was permanently and totally disabled.

Furthermore, respondent's reliance on cases from this Court involving applications for duty-related disability retirement under MCL 38.21 was not misplaced or contrary to the law, as the circuit court determined. The fact is, there are several unpublished cases in which this Court has cited cases construing MCL 38.21 when faced with issues arising under MCL 38.24. See *Jackson-Rabon v State Employees Retirement Bd*, unpublished per curiam opinion, issued February 15, 2005 (Docket No. 249538*); Caffie v State Employees Retirement Bd*, unpublished per curiam opinion, issued February 15, 2005 (Docket No. 247885); *Brown v State Employees Retirement Bd*, unpublished per curiam opinion, issued February 18, 2003 (Docket No. 232973); *Black v State Employees Retirement Bd*, unpublished per curiam opinion, issued November 16, 2001 (Docket No. 223239).[9] MCL 38.21 is similar to MCL 38.24 in some respects, and this Court cited *Knauss v State Employees' Retirement System*, 143 Mich App 644; 372 NW2d 643 (1985), as authoritative in *Brown* and in *Caffie*. Respondent's reliance on these cases applying MCL 38.21 was not legal error requiring reversal, particularly in the absence of case law expressly construing MCL 38.24.

The Board reached its decision after reviewing a large record that contained conflicting evidence. The Board was faced with the opinions of Dr. Fenton and Dr. Obianwu that petitioner was not totally and permanently disabled, a number of reports and depositions from petitioner's healthcare providers stating that she was totally and permanently disabled, and petitioner's

---

[9] We view these unpublished opinion as persuasive on the point that the Board's use of case law construing MCL 38.21 was not contrary to the law, but note that unpublished opinions are not binding under the rules of stare decisis. MCR 7.215(C)(1).

own hearing testimony regarding her current physical and mental conditions. The Board concluded that petitioner was not totally and permanently disabled, and, therefore, not entitled to nonduty disability retirement. The circuit court improperly substituted its judgment and evaluation of the credibility of witnesses for that of the Board. A reasonable mind could accept the evidence from Dr. Fenton and Dr. Obianwu supporting that the petitioner was not mentally or physically incapacitated for duty, combined with the evidence of petitioner's functioning outside the workplace, as adequate to support the Board's denial; even if these opinions are contrary to that of other experts. There is substantial evidence to support that petitioner's disability did not prevent her from employment reasonably related to her past experience and training. See MCL 38.24; *Knauss, supra* at 648-650.

Even if the Board could retire petitioner in the absence of certification by the medical advisor, there was substantial expert testimony to support the finding that petitioner was not totally and permanently disabled. The Board's decision was not contrary to law and was not arbitrary, capricious, or an abuse of its discretion. Because competent, material, and substantial evidence existed on the whole record to support the Board's decision, the circuit court clearly erred in remanding the matter to the Board. We are left with a definite and firm conviction that a mistake has been made because the circuit court displaced the Board's reasonable views with the court's own. See *Michigan Employment Relations Comm, supra* at 124.

Reversed.