*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM FRANCIS WALSH,

Petitioner-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent-Appellant.

UNPUBLISHED
March 17, 2020

No. 345259
Jackson Circuit Court
LC No. 18-000104-AA

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

In this case involving petitioner William Francis Walsh's request for expunction from the Michigan Child Abuse and Neglect Central Registry (Central Registry), the Department of Health and Human Services (DHHS) appeals by leave granted[1] the circuit court's order reversing the final decision of the administrative law judge (ALJ). We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose from petitioner's alleged physical abuse of his adopted son, CW. On February 15, 2016, CW ran away from petitioner's home and reported that he did not want to return because petitioner had been spanking him. The police were contacted, and they brought CW to the hospital.

Michelle Gleed, an investigator for the DHHS, went to the hospital to investigate. Gleed physically examined CW and observed bruises covering his arms and legs, and a large bruise on the upper part of his right thigh. The bruise, which was approximately five inches long, covered "the mass" of CW's right thigh. When Gleed asked CW about the bruise, CW indicated that he had been spanked by petitioner with a belt two weeks earlier. CW indicated that petitioner had

---

[1] *Walsh v DHHS*, unpublished order of the Court of Appeals, entered January 14, 2019 (Docket No. 345259).

spanked him over his pants and a pull-up diaper, but because CW had tried to move away from petitioner during the spanking, the belt had hit him on his thigh. CW told Gleed that he knew that the bruise was from the spanking because he looked at his thigh afterwards and saw the bruise forming. CW also told Gleed that this was not the first time that petitioner had spanked him and that it was normal for him to bruise as a result. CW indicated that he ran away from petitioner's home because he wanted to see his biological mother and because he did not want to get spanked anymore.

After speaking with CW, Gleed spoke with petitioner and his wife, who both admitted that petitioner spanked CW. Petitioner admitted that he had spanked CW with a belt two weeks earlier, and indicated that he normally spanked CW once or twice a month. Petitioner was unaware that any of his spankings had left marks on CW. After Gleed's initial interview with petitioner, he provided an alternative explanation for the bruise on CW's right thigh. Specifically, petitioner indicated that CW often played with a sled in the snow, which had "handles that are grooved." Petitioner reported that the bruise was consistent with CW's legs hitting the sides of the sled. Gleed discounted the alternative explanation and concluded that there was sufficient evidence to prove that petitioner physically abused CW. Petitioner was sent a notice that he was placed on the Central Registry. Thereafter, petitioner submitted a request that his name be expunged from the Central Registry. After the DHHS denied his request for expunction, petitioner requested a hearing.

An ALJ conducted a hearing to determine whether there was sufficient evidence to support that petitioner abused CW. At the hearing, Dr. Bethany Mohr testified as a medical expert. Dr. Mohr stated that CW was "medically complex" because he had a large spleen and a low platelet count, which could cause blood clotting issues. Dr. Mohr testified that she was not certain how much CW's platelet count contributed to his bruising. She also testified that she could not form an opinion with regard to whether CW's bruises were caused by physical abuse because she did not examine him. However, Dr. Mohr noted that that CW was advised not to play high contact sports and that he should not be physically punished. According to Dr. Mohr, the use of padding on CW's body, such as a pull-up diaper, would not necessarily lessen the likelihood of bruising.

Petitioner and his wife testified at the hearing. According to petitioner's wife, CW's behavior changed immediately after his adoption was finalized. Specifically, he began engaging in defiant behavior, including urinating in the corner of his bedroom, down the heating vent in his bedroom, on his mattress, and out the window. Petitioner admitted that he began spanking CW after other disciplinary techniques failed. Petitioner testified that he spanked CW with a belt, striking about three to six times on average, while CW was wearing pull-up diapers. Petitioner acknowledged spanking CW about two weeks before CW ran away. However, petitioner stated that he did not hit CW's thigh with the belt and that he was certain that the spanking did not cause the bruise on CW's thigh. As an alternative explanation for the bruise, petitioner's wife testified that CW had the family dog pull him in a sled around the yard and that CW had bounced around in the sled. She stated that the sled had handles near CW's thighs when he sat in it.

Petitioner testified that CW had behaved in a way that would encourage him to "give up on" CW. Petitioner further testified that CW had expressed to petitioner that he acted that way because he wanted to be reunited with his biological mother. Dr. Anthony Gensterblum, who conducted a psychological evaluation of CW, testified that CW acted out with the intent of

convincing petitioner and his wife to rescind the adoption so that he could be reunited with his biological mother. Two other witnesses agreed that CW wanted to be reunited with his biological mother and that he intended to continue his defiant behavior in petitioner's home in order to accomplish this goal.

After hearing all the evidence, the ALJ held that the DHHS had "proven by a preponderance of the evidence that it was legally appropriate" to place petitioner's name on the Central Registry. The ALJ determined that that CW's statements that he was spanked by petitioner and that the spanking caused bruising to be credible. The ALJ also determined that Dr. Mohr's testimony and evaluation supported the claim that petitioner's spanking could have resulted in bruising. The ALJ found as follows:

> The evaluation and credibility of the testimony and evidence was not straightforward. Since Petitioner admitted to spanking [CW] then the crux of the issue is whether the spanking caused bruising. [CW] stated that previous spankings had also left bruises. The CPS Investigator found the statements of [CW] to be credible. [CW]'s misguided desire to return to his biological mother's care does bring into question his possible motivation to embellish his injury or falsely tie the bruising to his father. However, that would presume that [CW] was aware that the bruising needed to be connected to the spanking for there to be a substantiation. The nature of the bruise and its coloration were not conclusive. There were no linear marks that confirmed that a belt caused the bruise on [CW]'s thigh and no one was able to date the bruise. The fact that [CW] had numerous other bruises and has a medical condition that causes him to bruise easily also makes it difficult to assess and evaluate the bruise. Petitioner testified credibly that his decision to spank [CW] was because other measures were ineffective. It was clear from his testimony that he cares a great deal for his son and that his decision to use physical discipline was not taken lightly. However, based on [CW]'s history of bruising easily and his medical condition, Petitioner must have been aware that there was a risk that [CW] could bruise even if he was spanked over a pull up. Petitioner chose to spank [CW] despite that risk and that is troubling. Petitioner's testimony that he specifically checked [CW] when he got out of the shower to see if he had bruising in the time between the last spanking and the hospital visit was self-serving and not credible.

> When the evidence is weighed in its totality it is more likely than not that Petitioner spanked [CW] and left bruising. Therefore, the Department has established by a preponderance of the evidence that Petitioner physically abused [CW].

Thereafter, petitioner appealed the ALJ's decision to the circuit court. The circuit court issued a written opinion, concluding that the decision of the ALJ was arbitrary and capricious. The circuit court held, in relevant part, the following:

> First, the ALJ opined that because [petitioner] testified that is was possible that he bruised CW's upper thigh/lower buttocks as a result of his spanking, that is was [sic] clear and convincing evidence of physical abuse. However, such a finding

is not one that is supported by substantial evidence on the whole record. [*Hegadorn v Dep't of Human Servs Dir*, 320 Mich App 549; 904 NW2d 904 (2017).] Just because [petitioner] spanked his child on the buttocks does not automatically mean that he is responsible for all of CW's bruises. This finding from the administrative court was arbitrary and capricious because it did not delve deeper into this.

Second, the ALJ opined that it was more than [*sic*] likely than not that [petitioner] spanked CW and left bruising. However, there is nothing in the record to support that there was bruising on CW's buttocks as a result of the spanking. The [ALJ] stated that "the crux of the issue is whether the spanking caused the bruising." Additionally, the medical doctor that testified at the administrative hearing stated that she could not be certain if physical abuse occurred on this child without seeing him in person first. She never saw CW in person, yet still stated that CW should not be spanked, not play sports. The decision to keep [petitioner] on the Central Registry based on this finding was clearly arbitrary and capricious.

The circuit court vacated the decision of the ALJ. Thereafter, the DHHS filed a motion for reconsideration, which was denied. This appeal followed.

## II. ANALYSIS

On appeal, the DHHS argues that the circuit court clearly erred by failing to properly apply the substantial evidence test and by determining that the ALJ's decision was arbitrary and capricious when it was supported by substantial evidence on the whole record. We agree.

"A final agency decision is subject to court review but it must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 583; 701 NW2d 214 (2005). See also Const 1963, art 6, § 28. "A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott v Civil Serv Comm*, 298 Mich App 158, 162; 825 NW2d 674 (2012).

A court must review the entire record—not just the portions that support an agency's findings—when assessing whether the agency's decision was supported by competent, material, and substantial evidence on the whole record. *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). "Substantial evidence" means evidence that a reasonable person would find acceptably sufficient to support a conclusion. *Id.* This may be substantially less than a preponderance of evidence, but does require more than a scintilla of evidence. *Id.* The *Risch* panel further observed:

Moreover, if the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence. A reviewing court may not set aside factual findings supported by the evidence merely because alternative findings

could also have been supported by evidence on the record or because the court might have reached a different result. [*Id*. at 372-373 (citations omitted).]

"Under th[e] test, it does not matter that the contrary position is supported by more evidence, that is, which way the evidence preponderates, but only whether the position adopted by the agency is supported by evidence from which legitimate and supportable inferences were drawn." *McBride v Pontiac Sch Dist (On Remand)*, 218 Mich App 113, 123; 553 NW2d 646 (1996).

"This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review." *VanZandt*, 266 Mich App at 585. "A finding is clearly erroneous where, although there is evidence to support the finding, [this Court] on the entire record is left with the definite and firm conviction that a mistake has been made." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003).

In this case, the ALJ held that the DHHS had "proven by a preponderance of the evidence that it was legally appropriate" to place petitioner's name on the Central Registry because petitioner had physically abused CW. When a report of child abuse has been made, the DHHS must commence an investigation to determine whether the child was abused or neglected. MCL 722.628(1) and (2). If the DHHS "determines that there is evidence of child abuse" and the perpetrator is "an owner, operator, volunteer, or employee of a licensed or registered child care organization," including a foster home, the DHHS must list the perpetrator on the Central Registry. MCL 722.628d(1)(d) and (3); MCL 722.622(h); MCL 722.111(b). Because petitioner was a licensed foster parent at the time of Gleed's investigation, the DHHS was mandated to list petitioner on the Central Registry if it determined that there was evidence that he abused CW.

Child abuse includes "nonaccidental physical . . . injury" inflicted by a parent. MCL 722.622(g). Because the statute does not define "physical injury," it is proper to consult dictionary definitions. See *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "injury" as "an act that damages or hurts," and defines "physical" as "of or relating to the body." Thus, "physical injury" includes "an act that damages or hurts" the body.

In this case, a photograph of the bruise on CW's right thigh, which was five inches long, was admitted into evidence. Testimony established that CW had a medical condition that caused him to bruise easily, and petitioner admitted that he spanked CW with a belt approximately two weeks before CW ran away. Although Dr. Mohr testified that she could not opine whether the spanking caused the bruise, her testimony regarding CW's medical complexity and low platelet count supported that the spanking could have resulted in bruising. Gleed's testimony supported that CW told Gleed that the bruise on his right thigh was caused by a spanking from petitioner and that the belt had hit him on his thigh because he turned away from petitioner. CW told Gleed that he knew that the bruise was caused by petitioner spanking him because CW looked at his thigh after petitioner spanked him. CW indicated that the bruise was painful. The ALJ concluded that Gleed was credible, and that the statements that CW made to Gleed were credible. Although the ALJ noted that the evidence regarding CW's desire to reunite with his biological mother presented

a potential alternative motivation for his statements, the ALJ ultimately found the alternative unlikely because it "would presume that [CW] was aware that the bruising needed to be connected to the spanking." Although petitioner testified that he did not see bruising on CW after the spanking, the ALJ rejected petitioner's testimony based on a finding that it was self-serving and not credible.

On the basis of this evidence and giving deference to the ALJ's findings of fact and credibility determinations, we conclude that reasonable minds would find that there was sufficient evidence to support the ALJ's determination that the spanking more likely than not caused CW physical injury, i.e., resulted in CW's bruise. See *Risch*, 274 Mich App at 372-373; *Vanzandt*, 266 Mich App at 584. Therefore, competent, material, and substantial evidence supported the ALJ's decision. Moreover, the ALJ's decision was not arbitrary and capricious because the ALJ's decision was well-reasoned, and the ALJ considered conflicting evidence when making its findings and reaching a conclusion. See *Wescott*, 298 Mich App at 162. Consequently, the circuit court clearly erred by substituting its own factual findings and credibility determinations for those of the ALJ and by ordering that petitioner's name be expunged from the Central Registry.

Reversed. The findings and decision of the ALJ are reinstated.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Anica Letica

-6-